UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| GERALD and COREY ANDERSON, | ) | |
| | ) | |
| Plaintiffs, | ) | CIV 04-2247 PHX JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| | ) | [Re:  Motion at Doc. 16] |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY,  a foreign | ) | |
| insurance corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.  MOTION PRESENTED

At docket 16, plaintiffs Gerry and Corey Anderson move for an order compelling defendant American Family Mutual Insurance Company ("American Family") to submit to appraisal.  At docket 20, defendant American Family opposes the motion.  Plaintiffs' reply is filed at docket 24.  Oral argument was not requested and would not assist the court.

II.  BACKGROUND

This action involves an insurance dispute arising out of plaintiffs' alleged loss of personal property.  Gerald and Corey Anderson purchased a homeowners policy from

defendant American Family, effective August 1, 1997, through August 1, 1998.[1]  The

policy provides coverage for damage to their dwelling, as well as personal property

replacement coverage. In case of loss, the policy requires the insureds to give

American Family a detailed list of the lost property, "showing quantities, when and

where acquired, original cost, current value and the amount of loss claimed."[2]

The policy also contains an appraisal provision, which states in pertinent part:

> **Appraisal.**  If **you** and **we** fail to agree on the amount of loss,
> either may demand an **appraisal** of the loss.  In this event, each
> party will choose a competent and disinterested appraiser within 20
> days after receiving a written request from the other.[3]

Under the policy, an insured's loss is payable thirty days after American Family

receives the insured's "properly completed proof of loss" and has either reached an

agreement with the insured, a final judgment has been entered, or an appraisal award

is filed with American Family.[4]  The policy further provides that an insured may not sue

American Family unless "there is full compliance with all the terms of this policy" and

the suit is "brought within one year after the loss or damage occurs."[5]

On October 15, 1997, the Andersons sustained the loss of personal property due

to theft at their insured dwelling.[6]  Gerald Anderson reported the loss to American

---

[1]Doc. 28.

[2]Arizona Homeowner's Policy at 9, doc. 28.

[3]Endorsement 584 (emphasis in original), doc. 40.

[4]Doc. 40.

[5]Policy at 9, doc. 28.

[6]At the time of the alleged theft, plaintiff Gerald Anderson was residing at the insured dwelling with his girlfriend and her two children.  Mr. Anderson represents that he and Corey

Family on November 4, 1997.   On November 6, 1997, American Family sent Mr. Anderson the required forms to submit a personal property claim, also referred to as a "theft package."  Shortly thereafter, American Family investigated and paid for the physical damage to Anderson's home.  American Family contacted Anderson several times from December 1997 to April 1998 requesting information and supporting documentation for Anderson's personal property claim.  On April 24, 1998, the file was closed due to Anderson's failure to supply the required information.

On September 16, 1998, Anderson informed American Family that he had never received the theft package.  American Family mailed another copy the same day. On October 5, 1998, Anderson requested an extension of the one-year policy limit to submit his claim.  American Family extended the deadline for Anderson to submit his theft package to October 25, 1998, and the deadline for turning in replacement cost receipts to November 15, 1998.

Anderson submitted a thirty-five page personal property inventory by the extended deadline.  However, the inventory was not signed by Corey Anderson and a large part of the inventory was illegible.  In addition, Anderson did not provide all of the required information and documentation, including the approximate age of each item, original cost, replacement cost, and replacement cost receipts.

On November 13, 1998, American Family sent Anderson a reservation of rights letter, detailing the information needed to process his claim, setting forth the policy conditions, and stating that the claim investigation had revealed potential problems in

─────────────────────

Anderson are now divorced.

the application process regarding Anderson's stated occupation and marital status.
American Family also returned Anderson's property list for Anderson to complete,
stating that "[r]eplacement prices, ages, place of purchase have not been included for
the large majority of items" and that "[v]ery minimal receipts have been submitted."

The record reflects American Family's repeated attempts from November 1998
to October 2003 to obtain the properly completed property lists from the Andersons.
There is no evidence that the Andersons submitted any additional information or
documentation in support of their personal property claim during that time period.

On October 8, 2003, the Andersons demanded an appraisal.[7]  By letter dated
October 14, 2003, American Family responded that "[a]ppraisal would not be
appropriate as the insureds have not complied with the conditions of their policy."  The
letter further stated, "Appraisal is the remedy for a disagreement in the amount of the
covered loss.  The insureds have not presented the amount of their covered loss,
therefore, we have not been able to determine the amount of the loss, and a
disagreement can not be determined to exist."[8]

On July 14, 2004, plaintiffs Gerry and Corey Anderson filed a complaint in state
court, alleging claims for breach of contract, bad faith, and intentional infliction of
emotional distress.[9]  Defendants timely removed plaintiffs' complaint to this court on the

---

[7]Doc. 44, exh. 31.

[8]Doc. 20, exh. 32.

[9]Doc. 1, exh. 1.

-4-

basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.[10]  On April 8, 2005, plaintiff

filed the underlying motion to compel appraisal.[11]

### III.  DISCUSSION

Plaintiffs move the court for an order compelling appraisal pursuant to A.R.S.

§ 12-1502.[12]  Defendants oppose the motion on the grounds that plaintiffs have waived

their right to appraisal under the policy.   Under Arizona case law, principles of

arbitration law apply to disputes regarding an insurance policy appraisal clause.[13]

"[W]avier of an appraisal clause, like waiver of an arbitration agreement, is generally not

favored, and the facts of each case must be considered in light of the strong policy

approving of arbitration."[14]  It is well-settled, however, that a party to a contract may

waive its right to enforce an arbitration agreement or appraisal provision by its conduct.

"Waiver occurs when a party relinquishes a known right or exhibits conduct that clearly

warrants inference of an intentional relinquishment."[15]

---

[10]Doc. 1.

[11]Doc. 16.

[12]A.R.S. § 12-1502 (1)(A) provides:

> On application of a party showing an agreement described in § 12-1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party.  Otherwise the application shall be denied.

[13]*Meineke v. Twin City Fire Insurance Company*, 892 P.2d 1365, 1369 (Ariz. Ct. App. 1995).

[14]*Id.* at 1370.

[15]*Id.*

Here, plaintiffs' conduct clearly warrants inference of an intentional relinquishment of the right to an appraisal.  Plaintiffs first demanded an appraisal on October 8, 2003, almost six years after the loss.   Defendant American Family responded with a letter stating that appraisal was not appropriate because the parties had not reached differing values for the alleged loss.  On July 14, 2004, plaintiffs filed a complaint in state court, alleging claims for breach of contract, bad faith, and intentional infliction of emotional distress.  Plaintiffs' complaint seeks "damages for the amount withheld from Plaintiffs['] claim for insurance benefits, said amount to be proven at trial or at appraisal."[16]  Defendant answered the complaint on the merits.  Plaintiffs did not move to compel an appraisal until almost nine months after filing the lawsuit.

 In *Bolo Corporation v. Homes & Son Construction Co.*, the Arizona Supreme Court addressed the issue of whether a plaintiff's election to litigate is a waiver of the right to arbitrate.[17]  The plaintiff in *Bolo* waited six months after filing suit before filing a motion for an order to compel arbitration.  The court held that when the "plaintiff sought redress through the courts, in lieu of the arbitration tribunal, and asked the court for exactly the same type of relief (i.e., damages), which an arbitrator is empowered to grant, it waived the right to thereafter arbitrate the controversy over the protest of the defendant."[18]  Here, the plaintiffs filed suit seeking damages in the amount of plaintiffs' claim for insurance benefits.  Plaintiffs then proceeded with the litigation, waiting nearly

---

[16]Complaint at 7, doc. 1, exh. 1.

[17]464 P.2d 788 (Ariz. 1970).

[18]*Id.* at 793.

nine months after filing suit before moving to compel appraisal.  In doing so, plaintiffs waived the right to have an appraisal over the protest of the defendant.  While appraisal, like arbitration, is generally favored, allowing plaintiffs to proceed on the "dual pathways" of appraisal and litigation "nullifies the time and expense-saving benefits" of appraisal and wastes judicial resources.[19]

## IV.  CONCLUSION

For the reasons set forth above, plaintiffs' motion to compel appraisal at docket 16 is **DENIED**.

It is further noted that the court has received and reviewed the parties' briefing in response to the court's order to show cause dated August 23, 2005.[20]  The court appreciates the receipt of the parties' briefing, but declines to address the issue of whether or not plaintiffs' claims are barred by the applicable statutes of limitations at this time.

DATED at Anchorage, Alaska, this 24th day of October 2005.


_____
/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[19]*Meineke*, 892 P.2d at 1371.

[20]Doc. 38.